## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **DANIEL SHEPHERD,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. 04-CV-302** |
| | : | |
| **CITY OF COLUMBUS, et al.,** | : | **JUDGE ALGENON L. MARBLEY** |
| | : | |
| | : | **Magistrate Judge Kemp** |
| **Defendants.** | : | |

## <u>OPINION AND ORDER</u>

## I.  INTRODUCTION

This case is pending before the Court on the Motion for Summary Judgment by Defendant, City of Columbus (the "City").  Plaintiff, Daniel Shepherd, never responded to Defendant's Motion.  For the reasons set forth herein, the City's Motion for Summary Judgment is **GRANTED** on all counts.

## II.  BACKGROUND

### 1. Statement of Facts[1]

### a. The Shepherd Divorce

On November 19, 2002, Plaintiff's ex-wife, Barbara Shepherd, filed for divorce from Plaintiff in the Franklin County Court of Common Pleas, Domestic Relations Division.  At the same time, Ms. Shepherd also filed for an Exclusive Occupancy Order of the marital residence located at 6576 Benjamin Drive, Columbus, Ohio.  On December 23, 2002, Ms. Shepherd was

---

[1]On a motion for summary judgment, the Court is to consider the facts in the light most favorable to the non-movant.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 133, 157 (1970).  In this case, however, because Plaintiff has not responded to the City's motion for summary judgment, the Court only has access to the facts as presented by the Defendant.

granted a Civil Protection Order ("CPO"), ordering Plaintiff to vacate immediately and stay away from 6576 Benjamin Drive

Though the Sheriff's Office had to make many attempts before they could serve Plaintiff with the CPO, they finally succeeded on January 21, 2003.  Shortly thereafter, on January 23, 2003, Magistrate Judge Hosafros issued an "Agreed Magistrate's Exclusive Occupancy Order," granting Ms. Shepherd exclusive use of the residence and dismissing CPO.  The Exclusive Occupancy Order ("EOO") remained in effect until the Shepherds finalized their divorce on January 16, 2003.

### b. The Benjamin Drive Incident

On June 5, 2003, while the EOO was still in effect, Plaintiff returned to his former Benjamin Drive residence intent upon taking items from the property to his current residence at 474 Oakwood Avenue, Columbus, Ohio.[2]  In order to transport the items from the Benjamin Drive property to the Oakwood Avenue property, Plaintiff rented a U-Haul.  Further, he allegedly stopped at a homeless shelter where he paid Eric Brooks ("Brooks") forty dollars to help him in his efforts.

Upon arriving at the Benjamin Drive address, Plaintiff, with help from Brooks, began to remove items both from the garage and from the shed.[3]  Soon after, a neighbor, observing two men removing items from Ms. Shepherd's house, called the police, and Plaintiff learned the

---

[2]Except for one previous occasion in March or April of 2003, Plaintiff had not returned to his former residence on Benjamin Drive since December 2002.  Further, on that previous occasion, Plaintiff allegedly followed the proper procedure by contacting both his attorney and the police in advance.  Nonetheless, on June 5, 2003, the date of the incident giving rise to this litigation, Plaintiff allegedly failed to notify his attorney, his ex-wife, or the police.

[3]Though Plaintiff testified that "he used the key code" to open the garage and that he "unlocked the shed with a key," photos of the shed clearly show that the lock was actually knocked off.

police had been alerted.  Plaintiff and Brooks immediately stopped what they were doing, leaving tools and other items scattered in the yard.[4]

### c. The Police Step In

In response to the neighbor's phone call to the police, Officers Bruce Orlov ("Orlov") and Steve Smith ("Smith") responded by helicopter to the 6576 Benjamin Drive address.  The Officers arrived in a matter of minutes, and observed Plaintiff and Brooks exiting the garage and hurriedly closing the U-Haul door.  The men then fled the scene in the U-Haul.  Allegedly, Plaintiff tried to elude the helicopter by driving quickly and erratically through the neighborhood street.  Brooks bailed out of the U-Haul while Plaintiff continued to drive.

Plaintiff later acknowledged that he was aware that he was being pursued by the police and that he had heard sirens.  Instead of stopping, however, Plaintiff continued to make several evasive turns until, eventually, he stopped the U-Haul in the parking lot at Turnberry Park.  Once at the Park, Plaintiff exited the vehicle and headed in the direction of the nearby woods.

Officers Elkins and Hetterscheidt (the "Officers") pulled into the Park only moments later, and approached Plaintiff, repeatedly yelling for him to lie on the ground.  They had heard the earlier radio transmissions from the helicopter, and, as such, they believed that Plaintiff had committed a burglary at the Benjamin Drive address and then fled the scene.  Plaintiff did not obey the Officers' repeated orders to surrender, and he later acknowledged that it took him at least a "good minute" to follow orders and get down on the ground.[5]

---

[4]Allegedly, Plaintiff fled so quickly that when he took the family dog, Precious, he threw her into the back compartment of the U-haul, with all of the tools.

[5]The details that follow are in dispute.  Plaintiff claims that he willingly exited his vehicle and approached the Individual Defendants to present his identification, but, because his poor health prevented him from getting on his knees as quickly as the Individual Defendants would have liked, they beat him with their batons about the legs and thighs.  Defendants, on the other hand, assert that because Plaintiff continuously resisted them, they followed regular procedure to

Once the Officers had successfully handcuffed Plaintiff, he indicated that he was having trouble breathing, and they allowed him to use an inhaler until he regained his composure.  The Officers then notified Sergeant Kaeppner of the incident, and he responded to the scene to investigate.

Shortly thereafter, Plaintiff was transported to the hospital for bruising he received at the hands of the Officers, and he was released within one hour of his arrival.  Sergeant Kaeppner interviewed witnesses, reviewed the radio transmissions and took photographs.  Plaintiff refused to make a statement or be interviewed.  Sergeant Kaeppner's chain of command reviewed his investigation.

## 2. Procedural History

Plaintiff filed his initial four-count complaint (the "Complaint") on April 20, 2004, seeking monetary relief and naming two John Doe Police Officers[6] (the "Officers") and the City as defendants (collectively, "Defendants").  Plaintiff brings Counts I through III against the Officers in their individual capacities: (1) in Count I, Plaintiff claims that the Officers violated his constitutional rights under 42 U.S.C. § 1983; (2) in Count II, Plaintiff raises an assault and battery claim against the Officers; and (3) in Count III, Plaintiff brings claims of false arrest and illegal imprisonment against the Officers.  Moreover, in Count IV, Plaintiff claims that the City violated his constitutional rights under 42 U.S.C. § 1983 by failing to supervise and/or adequately train their Police Department.

---

force his compliance and gain control, striking Plaintiff with a baton in the common peroneal area of his legs until they successfully handcuffed him.

[6]The Columbus Police Department later identified the John Doe Police Officers as Officers Elkins and Hetterscheidt.  Nonetheless, Plaintiff failed to move to amend his Complaint to identify Officers Elkins and Hetterscheidt as Defendants in accordance with Federal Rule of Civil Procedure 15(c).

On August 20, 2004, due to a failure to effectively serve process on the Defendants, the

Magistrate Judge issued an Order demanding that Plaintiff show cause why the case should not

be dismissed.  Plaintiff received an extension of time to respond to the show cause order, and on

September 15, filed his response, indicating that "[t]he [D]efendant was served by hand on

September 13, 2004."  Though Plaintiff served process on the City and has taken depositions of

Officers Elkins and Hetterscheidt, Plaintiff has yet to serve process on the Officers or identify

them in his Complaint.

On September 29, 2005, the City filed a Motion for Summary Judgment to dismiss the

case.  On October 10, 2005, citing irreconcilable differences, Plaintiff's Counsel, Charles A.

McKinney, withdrew.  As of March 30, 2006, despite both the Court's extension of time for

Plaintiff to file his memorandum contra and the Court's efforts to notify Plaintiff that it could

dismiss his case for failure to respond, Plaintiff has yet to respond to the City's summary

judgment motion.  Nonetheless, the Court has reviewed the facts of the case and rendered a

decision.  The Court's analysis follows.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate "[i]f the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show there is no

genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

law."  FED. R. CIV. P. 56(c).  The movant has the burden of establishing that there are no genuine

issues of material fact, which may be accomplished by demonstrating that the non-moving party

lacks evidence to support an essential element of its case.  *Celotex Corp. v. Catrett*, 477 U.S.

317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th

Cir. 1993).  In response, the non-moving party must then present "significant probative

evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993) (citations omitted).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The Court also must interpret all reasonable inferences in the non-movant's favor. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (stating that the court must draw all reasonable inferences in favor of the non-moving party and must refrain from making credibility determinations or weighing the evidence). The existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; however, there must be evidence from which the jury reasonably could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (finding summary judgment appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party").

## IV.  ANALYSIS

### A. Failure to Serve Process

Under Federal Rule of Civil Procedure 4(m), when a plaintiff has fails to serve a defendant with process, a court may dismiss that defendant from the case without prejudice. FED. RULE CIV. PRO. 4(m) ("[i]f service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant."); *see Bennett v. Everson*, 915 F.2d 1570 (6th Cir. 1990) (finding that the district court did not abuse its discretion in dismissing plaintiff's civil rights action because plaintiff did

6

not adequately respond to the court's order to show cause for his failure to effectuate service of process); *Doughty v. City of Vermillion*, 118 F. Supp. 2d 819 (N.D. Ohio 1999) (dismissing the case against John Doe defendants for plaintiff's failure to serve process upon them); *Nicholson v. City of Chattanooga, Tennessee*, 2005 WL 2657001, at *11 (E.D. Tenn. Oct. 18, 2005) (because plaintiff failed to move to amend her complaint, failed to identify the John Doe defendants within the appropriate statute of limitations, and failed to serve the John Doe defendants in accordance with Federal Rule of Civil Procedure 4(m), the Court dismissed the John Doe defendants).

Because this case was originally filed on April 20, 2004, Shepherd had until August 8, 2004 to complete service of the summons and Complaint upon the Defendants.  The record reveals that, as of March 21, 2006, Shepherd has still not obtained service of process upon either Officers Elkins or Officer Hetterscheidt.  Thus, the Court dismisses, without prejudice, the Officers from the instant action.[7]

## B. Section 1983 Claims

Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and the laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.  Section 1983 "'creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere.'" *Alexander v. Haymon*, 254 F. Supp. 2d 820, 830

---

[7]Though the Court, *sua sponte*, dismisses the Defendant Officers from Plaintiff's lawsuit *without* prejudice, it will also examine the Defendant City's summary judgment arguments. Should the Court decide to grant Defendant City's motion for summary judgment, it will dismiss the Defendant Officers from Plaintiff's lawsuit *with* prejudice.

(S.D. Ohio 2003) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir. 2000)). To

establish a claim pursuant to Section 1983, a plaintiff must demonstrate two elements: "(1) the

defendants deprived [plaintiff] of a right, privilege or immunity secured to [him] by the United

States Constitution or other federal law; and (2) the defendants caused the deprivation while

acting under color of state law." *See Gregory v. Shelby County, Tennessee*, 220 F.3d 433, 441

(6th Cir. 2000).[8]  Plaintiff alleges that Defendants violated both his Fourth, and Fourteenth

Amendment rights under the U.S. Constitution.  *See* U.S. CONST. AMENDS. IV and XIV.

### 1. Defendant Officers

In Count I of the Complaint, Plaintiff claims that the Defendant Officers violated his

constitutional right to be free from the "unreasonable seizure of his person," and free from the

use of "excessive, unreasonable and unjustified force against his person" under 42 U.S.C. §

1983.  *See* Complaint ¶¶ 22-24.  As established above, because he failed to serve process on the

Officers, the Court, *sua sponte*, dismisses, without prejudice, Plaintiff's claims against the

Officers.  *See supra* Part IV.A.  And should the Court find that Plaintiff's claims against the

Officers fail on their merits, it may also dismiss the claims, *with* prejudice.

### a. Unreasonable Seizure

Plaintiff claims that the Officers acted unreasonably in detaining and arresting him.

Defendants, however, argue that they acted reasonably in the situation.  Police may briefly stop

an individual for investigation if they have a "reasonable suspicion" that the individual has

committed a crime.  *United States v. Palomino,* 100 F.3d 446, 449 (6th Cir.1996). The same

Fourth Amendment test applies to vehicle stops.  *See Delaware v. Prouse,* 440 U.S. 648 (1979);

*Palomino,* 100 F.3d at 449. "Reasonable suspicion" is more than an ill-defined hunch; it must be

---

[8]Only the first prong of the test is relevant to this action because Defendants do not
dispute that they were acting under color of state law in detaining Plaintiff.

based upon "a particularized and objective basis for suspecting the particular person. . .of

criminal activity." *United States v. Cortez,* 449 U.S. 411, 417-18 (1981).  It requires "specific

and articulable facts which, taken together with rational inferences from those facts, reasonably

warrant" an investigatory stop.  *Terry v. Ohio,* 392 U.S. 1, 21 (1968); *United States v. Erwin,*

155 F.3d 818, 822 (6th Cir.1998).

Further, "the standard outlined in *Terry* and its progeny is not onerous." *See Alexander v.

Haymon*, 254 F. Supp. 2d 820, 831 (S.D. Ohio 2003).  The requisite level of suspicion "is

considerably less than proof of wrongdoing by a preponderance of the evidence." *United States

v. Sokolow,* 490 U.S. 1, 7 (1989); *McPherson v. Kelsey,* 125 F.3d 989, 993 (6th Cir.1997).

Moreover, reasonable suspicion can arise from evidence that is less reliable than what might be

required to show probable cause. *Alabama v. White,* 496 U.S. 325 (1990); *McPherson,* 125 F.3d

at 993; *Houston v. Clark County Sheriff Deputy John Does,* 174 F.3d 809, 813 (6th Cir.1999). As

*Houston* makes plain, the police may stop a vehicle if they have "reasonable suspicion" that

criminal activity has been or is being committed.  *Alexander v. Haymon*, 254 F. Supp. 2d 820,

831 (S.D. Ohio 2003).

In this case, Plaintiff's neighbors had contacted the police, and Plaintiff was suspected of

robbing his former residence.  From a helicopter, Officers Orlov and Smith personally observed

Plaintiff and Brooks exit the garage at 6576 Benjamin Drive and flee the scene, leaving items

scattered in their wake.  Further, having fled, Plaintiff drove erratically, and Brooks even

haphazardly "bailed out" of the truck while it was still moving.  Officers Elkins and

Hetterscheidt heard all of the radio transmissions concerning Plaintiff's behavior while they

pursued him.  Judging by Plaintiff's suspicious behavior in combination with the police

dispatches, the Court is persuaded that there can be no serious contention that the Officers lacked

reasonable suspicion for detaining Plaintiff when they observed him walking away from the U-Haul.

### b. Reasonable Use of Force

Courts have not defined a precise test for what constitutes a "reasonable use of force" under the Fourth Amendment. *Monday v. Oullette*, 118 F.3d 1099, 1104 (6th Cir. 1997) (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).  The appropriate analysis of a claim made by an arrestee that police officers used excessive force against him is an analysis under the Fourth Amendment's "reasonableness" standard. *Patrick v. City of Detroit*, 906 F.2d 1108, 1115 (6th Cir. 1990) (citing *Tennessee v. Garner*, 471 U.S. 1 (1985)).  The Court recently reaffirmed this rule in *Graham v. Connor*.  *See* 490 U.S. 386 (1989).  "The reasonableness standard requires balancing the extent of the intrusion on the [F]ourth [A]mendment interests of the person arrested against the government's interest in effective law enforcement." *See Patrick*, 906 F.2d at 1115.  "The correct focus of the [F]ourth [A]mendment question is whether, from the perspective of a reasonable officer, who many times must make split-second decisions, the force used was reasonable under the circumstances." *Id*.  This is a fact-specific inquiry that depends on factors such as the severity of the crime at issue, whether the suspect poses a threat to anyone, and whether the suspect is attempting to escape or is resisting arrest. *Id*.  Moreover, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer at the scene, rather than with the 20/20 vision of hindsight." *See Graham*, 490 U.S. at 396; *see also Smith v. Freeland*, 954 F.2d 343, 347 (6th Cir. 1992) (". . . [w]e must never allow the theoretical, sanitized world of our imagination replace the dangerous and complex world policemen face every day.   What constitutes [a] 'reasonable action' may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure.").

In this case, the crime at issue was a burglary, which amounts to a felony.  Additionally, Plaintiff posed an immediate threat to the Officers' safety by failing to immediately comply with their orders and by attempting to evade arrest by fleeing in the U-Haul upon seeing the police. Further, despite the fact that the Officers repeatedly ordered Plaintiff to the ground, Plaintiff later acknowledged that it took him at least a "good minute" to follow orders and get down on the ground.  While there is a question of fact remaining as to the specific details of Plaintiff's arrest,[9] the Court finds that, due to his admitted failure to submit quickly to the Officers, their decision to strike his legs was reasonable under the circumstances.  As such, based upon the totality of the circumstances, the actions taken by the Officers were objectively reasonable.

Because the Officers were reasonably suspicious of Plaintiff, and because they were reasonable in their actions, the Court **GRANTS** Defendant's Motion for Summary judgment as to Count I of Plaintiff's Complaint.  Further, because the Officers acted reasonably, Plaintiff cannot claim that he was assaulted and battered by and/or falsely imprisoned by the Officers. Thus, the Court **GRANTS** Defendant's Motion for Summary Judgment as to Counts II and III of Plaintiff's Complaint.

### 2. Defendant City of Columbus

The Officers are not the only named Defendants in this matter, and the Court must also consider the merits of Plaintiff's claim against the City.  In Count IV of his Complaint, Plaintiff claims that the Defendant City violated his Fourth and Fourteenth Amendment rights under § 1983 by: (1) developing and maintaining policies or customs "exhibiting deliberate indifference to the constitutional rights of persons"; (2) having a policy or and/or custom to "inadequately and improperly investigate citizen complaints of police misconduct"; and

---

[9]*See supra* note 5.

11

(3) having a policy and/or custom to "inadequately supervise and train" City police officers.  *See* Complaint ¶¶ 32-34.

Municipalities are included as persons within the meaning of Section 1983, and, therefore, plaintiffs may sue municipalities for relief under the statute.  *See Monell v. Dept. of Social Services*, 436 U.S. 658, 691 (1978).  A municipality may not be held liable under Section 1983 under a theory of *respondeat superior*.  *See Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th Cir. 2005) (citing *Monell*, 436 U.S. at 691).  Municipalities are only liable under Section 1983 only,

> 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'  Furthermore, for municipal liability, there must be an 'affirmative link between the policy and the particular constitutional violation alleged.'  The claimant has the burden of proof for establishing the existence of an unconstitutional policy and demonstrating the link between the policy and the alleged injuries at issue.

*Bennett*, 410 F.3d at 818-19 (quotations and citations omitted).

Accordingly,  "a city's inaction, including its failure to train or supervise its employees adequately, constitutes a 'policy or custom' under *Monell* when it can be said that the failure amounts to ' "deliberate indifference" towards the constitutional rights of persons in its domain.'" *See Kohler v. City of Wapakoneta*, 381 F. Supp. 2d 692, 712-13 (N.D. Ohio 2005) (citing *Daskalea v. District of Columbia,* 227 F.3d 433, 441 (D.C. Cir.2000) (quoting *City of Canton v. Harris,* 489 U.S. 378, 388-89 n.7 (1989)).  A municipality, however, is only liable for its policy or custom of deliberate indifference "when the municipality's 'policy or custom. . . inflicts the injury.' " *Id.* (quoting *Monell,* 436 U.S. at 694) (alteration in *Daskalea* ).  Plaintiffs must prove that their particular injuries were incurred because of the execution of the policy or custom.  *Id*.  Thus, a plaintiff must, "identify the [allegedly harmful] policy, connect the policy to

12

the city itself, and show that [his] particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993).

### b. Failure to Investigate

Plaintiff seeks to establish the City's municipal liability by asserting a claim for failure to investigate. *See* Complaint ¶ 33. Generally, a subsequent failure to conduct a meaningful investigation is not legally the "moving force" behind an alleged constitutional violation. *Daniels v. City of Columbus*, 2002 WL 484622, *5 (S.D. Ohio Feb. 20, 2002) (citing *Tompkins v. Frost,* 655 F. Supp. 468, 472 (E.D. Mich.1987) ("wrongful conduct after an injury cannot be the proximate cause of the same injury")); *see also*, *Fox v. VanOosterum,* 987 F. Supp. 597, 604 (W.D. Mich.1997) (argument that decision not to investigate, made after alleged violation took place, somehow caused that violation, defies logic). "[I]n some cases, the municipality may be held liable when its failure to conduct an investigation or discipline the accused rises to the level of a policy of acquiescence that in itself was the 'moving force.'" *See Daniels*, 2002 WL 484622, at *5. Even so, a "municipal policy or custom is shown by ratification only where the city's failure to investigate and discipline the alleged misconduct supports an inference that the city approves of or tolerates the misconduct." *See Murphy v. City of Reynoldsburg*, 1991 WL 150938 (Ohio App. Aug. 8, 1991). Where a municipality "fully investigates allegations of misconduct and in good faith determines that no misconduct occurred or that no discipline was warranted, there can be no reasonable inference that the municipality tolerates the alleged misconduct." *Id.* at 12; *see also, Dorsey v. City of Detroit*, 858 F.2d 338, 345 (6th Cir. 1988).

In this case, the Court agrees with the City's argument that "there can be no serious contention that the City ratified [the Officers'] alleged misconduct" by failing to investigate or discipline." *See* Defs.' Motion for Sum. Judgment at 12. As presented in the Statement of the Facts, once the Officers had detained Plaintiff, Sergeant Mark Kaeppner conducted a thorough

investigation, which included interviews of the parties, a review of the radio communications, and an attempt to interview Plaintiff himself.[10]  Further, according to Kaeppner, his investigation revealed only that the Officers' actions had been appropriate under the circumstances.  Hence, the most Plaintiff could establish is that Kaeppner reached the *wrong* conclusion.  As a matter of law, however, such a conclusory argument fails to rise to the level of deliberate indifference necessary to show an unlawful policy or custom for purposes of § 1983.

Furthermore, Plaintiff's "failure to investigate" claim fails because the Officers who investigated Plaintiff's allegations are not, for purposes of § 1983, decision-makers with authority to establish municipal liability.  *See Monell*, 436 U.S. at 694 (Section 1983 liability only attaches where an injury is inflicted by a deliberate choice to follow a course of action made by "lawmakers or by those whose edicts or acts may be fairly said to represent official policy").  Recognizing that these Officers are not policy-makers, to make them liable would be to adopt *respondeat superior*, a concept specifically prohibited by *Monell* and under § 1983.  *See* 436 U.S. at 691.  Considering the evidence in the light most favorable to Plaintiff, he has failed to assert evidence showing that the Defendant, City, should be liable under § 1983 for a failure to investigate Plaintiff's claims.

### c. Failure to Supervise and Failure to Train

Plaintiff also claims that the City "failed to supervise and train its police officers," thereby failing adequately discourage them from further constitutional violations.  See Defs.' Motion for Sum. Judgment at 13.  In order to assert a claim against the City on a theory of "failure to train," Plaintiff must establish that: (1) the training program at issue is inadequate to the tasks that officers must perform; and (2) the inadequacy is the result of the City's deliberate

---

[10]Plaintiff refused to make a statement.

indifference; and (3) the inadequacy actually caused the Plaintiff's alleged injury.  *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 390-97 (1989); *see also, Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407 (1997) (finding that to make out a claim for failure to supervise, plaintiff must identify a deficiency in the training program, and show that the specific deficiency actually *caused* a constitutional violation).  In order to prove "deliberate indifference," Plaintiff must show the need for better training was so obvious that the inadequacy was likely to result in a violation of constitutional rights.  *Barber v. City of Salem*, 953 F.2d 232 (6th Cir. 1992).

In this case, Plaintiff has failed to set forth evidence that the Defendant City failed to supervise or train its police officers.  Before serving on the force, the City requires that all prospective police officers participate in and graduate from a six-month training academy covering all relevant aspects of policing.  *See* Defs.' Motion for Sum. Judgment at 14.  Further, upon graduation from the Academy, all Columbus police officers must serve in a Field Training program.  *Id.*  As part of the Training program, before they receive their initial assignments, the officers are assigned to both work with and observe an experienced Field Training Officer.  *Id.*  Additionally, officers receive regular in-service training on relevant policing issues.  *Id.*

Hence, other than making conclusory allegations that the Defendant City failed to supervise or train its officers, there is no evidence that the City was "deliberately indifferent" to the need for relevant training.  Further, there is no evidence that the City's alleged failure to train its police officers resulted in a deprivation of Plaintiffs' constitutional rights in this case.

 As set forth above, Plaintiff has failed to raise a genuine issue of material fact as to its claims that the City is deliberately indifferent to its citizens' constitutional rights.  Accordingly, the Court **GRANTS** the Defendant City's Motion for Summary Judgment as to Count IV of Plaintiff's claim.

## V.  CONCLUSION

For the foregoing reasons, the Defendant City's Motion for Summary Judgment is

**GRANTED** on all counts.  This case is hereby dismissed.

   **IT IS SO ORDERED.**


                                          __s/Algenon L. Marbley_____
                                          **ALGENON L. MARBLEY**
                                          **United States District Court Judge**
**DATED: March 30, 2006**